# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**KIETH EDWARD KRANTZ,**<br><br>Debtor. | Case No. **20-90086-BPH** |

# MEMORANDUM OF DECISION

### INTRODUCTION

In this Chapter 13[1] case, creditor Diane Krantz ("Diane") filed a Motion for Leave to Pursue Enforcement of District Court Order Modifying Maintenance on August 13, 2020 ("Motion").[2] Diane requests relief pursuant to § 362(b)(2)(A)(ii). Debtor Kieth Krantz filed a Response to the Motion on August 27, 2020.[3] The Court held a hearing on the Motion and Response on October 8, 2020. Appearances were made on the record. No testimony was offered. The Court overruled Debtor's objection to the admission of Diane's exhibits and admitted Diane's exhibits 1-12. The Court has reviewed the Motion, Response, and accompanying exhibits. Based on the record developed before the Court, the following constitute the Court's findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.

### BACKGROUND

The facts are not disputed. The issues raised in the Motion and Response stem from the parties' divorce in 2019. The Montana Twentieth Judicial District Court, Lake County ("State

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.
[2] ECF No. 44.
[3] ECF No. 45.

1

Court"), entered Findings of Fact, Conclusion of Law and Final Decree of Dissolution on July 3, 2019[4] and entered Amended Findings of Fact, Conclusions of Law, and Final Decree of Dissolution on January 24, 2020 ("Divorce Decree").[5]

The Divorce Decree provided for two types of payment to Diane relevant to this dispute. First, the Divorce Decree required Debtor to pay $61,956 as an "equalization payment" either as a lump sum or in monthly payments of $1,000.[6] The equalization payment related to the marital property settlement set forth in the Divorce Decree. The marital property settlement provided for a net distribution of marital property valued at $119,776, to be split evenly between the parties. This division entitled both Debtor and Diane to $59,888. After accounting for the various individual debts the parties would remain liable for, and to ensure that both parties received their $59,888 share of marital property, Debtor was obligated to pay Diane $61,956.[7]

Second, the Divorce Decree required Debtor to make monthly payments of $700 to Diane as a maintenance obligation.[8] The monthly maintenance payments were required until Diane began to receive a "divorced spousal annuity" from Debtor's Railroad Retirement Account and a portion of retirement benefits Debtor would receive from the Railroad Retirement Board.[9] The Divorce Decree provided that once Diane began to receive these retirement benefits, "the maintenance award should be reduced by the amount she receives each month from the divorced spousal annuity and her portion of [Debtor's] monthly retirement benefits."[10] If the divorced spousal annuity and retirement benefits Diane received were equal to or greater than $700 per

---

[4] Exhibit 1 to ECF No. 59.
[5] Exhibit 2 to ECF No. 59.
[6] *Id*. at 11.
[7] Exhibit A to Exhibit 2 at ECF No. 59.
[8] *Id*. at 13.
[9] *Id.*
[10] *Id.*

month, Debtor's obligation to make monthly maintenance payments would terminate entirely. Similarly, if the annuity and retirement benefits totaled less than $700 per month, Debtor would be required to pay the difference to ensure Diane received a total of $700 on a monthly basis.[11] Upon Debtor's retirement in April 2020, Diane began to receive $757 per month from Debtor's retirement benefits.[12] Since these payments exceeded $700, Debtor's obligation to make monthly maintenance payments terminated.

Debtor filed his Chapter 13 petition on April 20, 2020.[13] Ten days after filing his petition, Diane filed a Motion to Modify Maintenance with the State Court ("Modification Motion").[14] Diane's Modification Motion alleged a series of factors she claimed justified modification including: an increase in Debtor's income in the preceding year; Debtor's decision to take early retirement resulting in a reduced retirement payment to her from that source; and discovery of an additional debt unknown at the time of the divorce that Diane would be singularly responsible for after Debtor's bankruptcy (assuming he receive his discharge).

Importantly, the Modification Motion also emphasized, "Due to Kieth's bankruptcy filing, Diane is now prohibited from asking this Court to take action against Kieth for his refusal to pay past due equalization payments, or asking this Court to require Kieth to make more than $50,000 that would have been due in the future but for the automatic stay now in place."[15] Finally, Diane explained that her Modification Motion "is not moving this Court to take any actions that would violate the automatic stay." Instead, "Diane only intends to offer evidence regarding this newly discovered joint debt of the parties as it applies to her own personal

---

[11] *Id.*
[12] ECF No. 45 at 2.
[13] ECF No. 1.
[14] ECF No. 59, Exhibit 9.
[15] *Id.*

financial situation and as it is relevant to maintenance."[16]

Shortly after filing the Modification Motion in State Court, Diane filed a "Motion to Clarify Applicability of Automatic Stay" ("Motion to Clarify") with this Court requesting an order permitting her to pursue her Modification Motion in the State Court.[17] The Motion to Clarify sought relief, at least in part, because "Diane is unable to receive her share of the marital estate in the form of property settlement payments" (i.e. the equalization payment) which was stayed upon the filing of Debtor's Chapter 13 petition.[18]

Debtor filed a Response disputing the merits of the Motion to Clarify, but acknowledging that seeking modification of the maintenance award in the State Court did not violate the automatic stay.[19] The Modification Motion referred to maintenance in some instances and the equalization payment in others, prompting the Court to set it for a hearing to determine more precisely the relief being requested. [20] Prior to the hearing, Debtor filed a report indicating that, "The Debtor views the June 25 hearing on this matter as an uncontested matter in that he believes the parties agree that Diane's state court request to modify maintenance is an exception to the automatic stay, but that the state court's Order modifying maintenance may be subject to future review by this Court."[21] Based on the parties' representation that the Motion to Clarify was uncontested, the Court granted the Motion to Clarify on June 23, 2020.[22]

---

[16] *Id*.
[17] ECF No. 20.
[18] *Id*. at 1.
[19] ECF No. 22.
[20] ECF No. 24.
[21] ECF No. 32 at 2.
[22] ECF No. 34. It appears Diane conflated maintenance and the equalization payment in the Motion to Clarify and later before the State Court. The Court does not conclude that this was deliberate. Instead it reflects the gray line that often exists between support and non-support payments in family law without a recognition of the importance the distinctions may have for bankruptcy purposes.

4

The State Court entered its "Order Modifying Maintenance,"[23] explicitly noting it was, "subject to the ruling in the United States Bankruptcy Court."[24] It determined that modification of Diane's monthly maintenance payments was warranted because "[Debtor] has filed for bankruptcy which means that Diane is no longer receiving equalization payments."[25] The State Court noted that "Diane has been left in an increasingly dire financial situation, at a time when [Debtor] is no longer making maintenance or equalization payments" and that its original maintenance award "was expressly intended to be in addition to the equalization payment…which Diane is no longer receiving due to the bankruptcy proceeding."[26]

Based on these findings, the State Court ordered Debtor to "continue to pay Diane maintenance in the amount of $700.00 per month," even though Diane was already receiving $757 per month from Debtor's retirement benefits and remained entitled to spousal annuity payments.[27] The State Court further held that the modified award "shall not terminate upon the death of either party nor shall it terminate upon the remarriage of Diane."[28]

Following entry of the Order Modifying Maintenance, Diane filed her Motion in this Court seeking to enforce the modified award in the State Court.[29] Debtor objected to the Motion and asserted that the Order Modifying Maintenance recharacterized the pre-petition equalization payment as a domestic support obligation.[30] Thus, according to Debtor, the modified award is

---

[23] Exhibit 10 to ECF No. 59.
[24] It appears the parties and State Court proceeded without waiting for this Court's order because the Order Modifying Maintenance was entered a week before it granted the Motion to Clarify, which ultimately adopted the parties' position that the Motion to Clarify was not contested so long as any order entered by the State Court was reviewed by this Court. With the benefit of hindsight, this has resulted in efficiencies for both courts.
[25] *Id.* at 2.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] ECF No. 44.
[30] *Id.*

5

not a "domestic support obligation" under § 101(14A) and enforcement of the modified award would violate the automatic stay under § 362(a). [31]

Debtor's Chapter 13 Plan[32] ("Plan") was confirmed on October 2, 2020.[33] Diane did not object to confirmation of Debtor's Plan. Prior to confirmation, the Chapter 13 Trustee entered a stipulation with the Krantz Family Limited Partnership ("LP"), a creditor in the case. According to the stipulation, LP will pay the estate $31,000 to resolve a claim and objection by the Chapter 13 Trustee related to an alleged "avoidable" transfer under 11 U.S.C. § 547(b). These funds along with funds from Debtor's plan payments will be distributed to unsecured creditors, including Diane. According to the confirmed Plan's liquidation analysis, $44,000 will be available to pay unsecured claims. At the hearing, the Trustee explained that Diane would share pro rata with the other unsecured creditors with allowed claims. This entitles Diane to receive approximately $16,125.00 under the confirmed Plan.

## ISSUE

Diane's Motion and Debtor's Response raise the following issue: Does the modified award constitute a domestic support obligation under § 101(14A) that may be enforced without violating the automatic stay provided by § 362(a)?

## ANALYSIS

The arguments raised in the Motion and Response focus almost entirely on whether the modified award qualifies as a "domestic support obligation" ("DSO") under § 101(14A) and whether modification and enforcement violate the stay under § 362(a).

When a debtor files a bankruptcy petition, all collection and enforcement activities

---

[31] *Id.*
[32] ECF No. 50
[33] ECF No. 56.

against the debtor, their property, and the property of the estate are stayed immediately. § 362(a). The automatic stay functions to "freeze" the status quo by precluding post-petition actions "in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). The automatic stay plays a fundamental role in the policy underlying the bankruptcy system by providing a debtor "breathing space" and "protect[ing] creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others." *Id*. Notwithstanding the foregoing, § 362(b) excepts certain actions from the broad "freeze" imposed under § 362(a).

Diane relies on one such exception and explains, "pursuing enforcement of the District Court Order Modifying Maintenance is permitted by § 362(b)(2)(A)(ii), but in an abundance of caution and in anticipation of opposition from Debtor, Diane moves for leave to pursue enforcement of the Order Modifying Maintenance in the district court." The Code provides:

> The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay under subsection (a) of the commencement or continuation of a civil action or proceeding for the establishment or modification of an order for domestic support obligations.

§ 362(b)(2)(A)(ii). Diane mistakes the effect of § 362(b)(2)(A)(ii). Section 362(b)(2)(A)(ii) provided Diane the authority to pursue her action in the District Court to *modify* the existing maintenance obligation set forth in the Divorce Decree. It does not provide her with a statutory basis to pursue *enforcement* of the modified obligation.

Such an exception exists under § 362(b)(2)(B), however, which excepts from the automatic stay "the collection of a domestic support obligation from property that is not property of the estate." In order for Diane to enforce the modified award under § 362(b)(2)(B), Diane must establish that, the modified award is a DSO and that she has the ability to satisfy the award

7

out of non-estate property. Debtor contends that the award at issue is not a DSO, so Diane is prohibited by the stay from enforcing the award. As a threshold matter, this Court must determine whether the award Diane seeks to enforce is a DSO.

### I.    The Modified Award is Not a DSO Under § 101(14A).

Diane contends that the modified award constitutes a DSO under § 101(14A). Debtor contends that, notwithstanding its label as a "maintenance award," the modified obligation simply replaces the equalization payment.[34] Since the equalization payment was in the nature of a property award, Debtor contends that the modified award does not constitute a DSO under § 101(14A).[35]

The term "domestic support obligation" is defined, as relevant here, as a debt accruing before, on, or after the date of the order for relief, that is owed to or recoverable to a spouse or former spouse of the debtor and is in the nature of alimony, maintenance, or support whether or not expressly so designated, and is established by a separation agreement, divorce decree, property settlement agreement, court order, or determination made under state law by a governmental unit. § 101(14A). The parties here dispute only whether the modified award is "in the nature of alimony, maintenance, or support."

Whether a particular debt is in the nature of spousal maintenance is a question of federal law. *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998). The fact that a property settlement is modifiable under state law is not sufficient to transform a property settlement award into a maintenance obligation. 1 Collier Family Law and the Bankruptcy Code ¶ 6.04[9] (16th ed. 2020) (stating that "modifiability by itself is rarely sufficient" in determining whether an award

---

[34] ECF No. 45 at 3.
[35] *Id*.

is a property settlement). The complaining spouse has the burden to demonstrate that the obligation at issue is in the nature of alimony, maintenance, or support. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). Here, Diane bears the burden of establishing that the modified award is actually "in the nature of alimony, maintenance, or support."

When determining whether an obligation is intended for support or in the nature of a property settlement award, a bankruptcy court must look beyond the language of the decree and is not bound by the label attached to the obligation by the state court. *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984). The Court looks instead to the "substance of the obligation." *Id*. The Ninth Circuit employs several factors to determine whether a specific obligation in a divorce decree constitutes a DSO :

1) The label given to the payments
2) The context or location of the disputed provision in the decree;
3) The parties' negotiations and understanding of the provision;
4) Whether a lump sum or periodic payments were provided for;
5) The relative earning power of the parties;
6) Whether interest accrues on the entire debt or only on the monthly payments past due;
7) Whether the debtor's obligation of payment terminates on the death or remarriage of the recipient, or on the death of the debtor.

*In re Combs*, 101 B.R. 609, 616 (9th Cir. 1989). No single factor is dispositive. Rather, the *Combs* factors are considered collectively to determine the intent of the court "in fixing the obligation and the purpose of the obligation in light of the parties' circumstances at that time." 1 Collier Family Law and the Bankruptcy Code ¶ 6.04[2] (16th ed. 2020 ) ("Virtually all of the other specific factors cited by courts in support of their decisions on dischargeability of marital obligations…are, in fact, considered only because they shed light on the issues of intent and the purpose actually served by the obligation in question.").

While ordinarily a discussion of the *Combs* factors is necessary to determine whether an obligation is a true DSO or a property settlement obligation, the modified award at issue is set

9

forth in the stand-alone Order Modifying Maintenance and not the Divorce Decree, which encompassed all obligations of the parties related to a divorce proceeding. This is a rare instance where the State Court's intent behind fixing the modified award is clear simply by looking to the language and structure of the Order Modifying Maintenance. The clear language employed in the Order Modifying Maintenance makes a discussion of the *Combs* factors unnecessary.

While the Order Modifying Maintenance characterizes the modified award as a "maintenance" obligation, the modified award was imposed because "Keith [sic] filed for bankruptcy which means that Diane is no longer receiving equalization payments." Next, the State Court explains its original maintenance order "was expressly intended to be in addition to the equalization payment…which Diane is no longer receiving due to the bankruptcy proceeding." Notably, the State Court did not address the newly discovered joint debt of $40,000, or otherwise refer to Diane's monthly expenses, or income. Instead, the singular emphasis of the State Court Order modifying maintenance is Debtor's bankruptcy filing and the likely loss of the equalization payment. Based on the Order modifying maintenance the State Court replaced the equalization payment it anticipated would be lost as a result of the bankruptcy with a modified DSO. Its intent could not be clearer to this Court.

The duration of the modified award is further indicia of the State Court's intent. The Order Modifying Maintenance provides that Debtor's obligation to pay the modified award to Diane "shall not terminate upon the death of either party nor shall it terminate upon the remarriage of Diane." Ordinarily, "if an obligation terminates on the death or remarriage of a recipient spouse, a court may be inclined to classify the agreement as one for support." *Shaver*, 736 F.2d at 1316. A property settlement, on the other hand, "would not be affected by the personal circumstances of the recipient spouse; thus, a change in those circumstances would not

affect a true property settlement, although it would affect the need for support." *Id*.

By its terms, the modified award is expressly intended to extend indefinitely, without regard to the death of either party, the remarriage of Diane, or changes to the financial circumstances of either party. It would be the strange case where a party requires spousal support after they are deceased. The indefinite duration of the modified award is more consistent with the substitution of the equalization payment with the modified award than maintenance based on necessity.

A state court may consider a spouse's bankruptcy when determining whether to modify an existing spousal maintenance award. Indeed, the Ninth Circuit has recognized that a state court may properly consider a debtor's "discharge in bankruptcy of [a] property settlement debt as a 'changed circumstance'" warranting modification of an existing alimony award. *In re Siragusa*, 27 F.3d 406, 408 (9th Cir. 1994). However, *Siragusa* also makes clear that a state court may not modify an existing obligation solely to offset a dischargeable property settlement award. *Id*. Accordingly, simply replacing the equalization payment with a modified award labeled as "maintenance" is not permitted.

In *Siragusa*, a debtor's ex-spouse sought modification of an alimony award in state court, citing the discharge of a property settlement in the debtor's bankruptcy as a "changed circumstance" making modification appropriate. *Id*. at 407. The state court considered the discharged property settlement and the need of the ex-spouse and modified the alimony award, ordering the debtor to make monthly payments "until the earlier of [the ex-spouse's] remarriage or the death of either of the parties." *Id*. The bankruptcy court adopted the state court's findings and dismissed the debtor's complaint alleging that the state court modification violated the discharge injunction set forth in § 524. *Id*. The district court affirmed the bankruptcy court's

holding and the appeal to the Ninth Circuit ensued. *Id*. On appeal the Ninth Circuit explained:

> Nothing in the record suggests that the divorce court was attempting to reinstate the property settlement debt; the amount awarded in alimony is not a substitute for the amount of the discharged property settlement. The alimony modification merely takes into account the fact that Ms. Siragusa would no longer receive the property settlement payments upon which the original alimony was premised. The discharge altered both Ms. Siragusa's need and Dr. Siragusa's ability to pay.

*Id*. at 408. Having concluded that the alimony modification was not merely a substitute for the discharged property settlement, but one based on Ms. Siragusa's need for ongoing support, the Ninth Circuit affirmed the lower courts' decision.

The facts in *Siragusa* are distinguishable from those here in two ways. First, the modified alimony award in *Siragusa*, unlike the modified award here, terminated on the death of either party or the remarriage of the non-debtor spouse. Second, the state court in *Siragusa* did not modify the existing alimony payment simply because the property settlement award was discharged in the debtor's bankruptcy. Rather, it looked to the discharged award *in conjunction with* the ex-spouse's need for alimony and the debtor's ability to make the modified alimony payments. This latter distinction is important because Diane emphasized the loss of the equalization payment in her motion, and this factor is prominently featured in the State Court's Order.

The Order Modifying Maintenance does not substantively examine Diane's need for increased spousal maintenance or Debtor's ability to make payments on the award. Instead, it simply determined that "Diane has been left in an increasingly dire financial situation" and "absent a showing of Keith [sic] being totally disabled, he is still capable of working" and generating income sufficient to pay the modified award. Unlike *Siragusa*, the modified award in this case does not modify an existing DSO based on Diane's need for ongoing spousal maintenance. Instead, it recharacterizes the property settlement award as something it is not—a

12

modified DSO.

The parties do not dispute that the equalization payment set forth in the Divorce Decree was a property settlement and not a maintenance award.[36] Debtor's obligation to pay the equalization payment was stayed due to the filing of his bankruptcy. Nothing in the Order Modifying Maintenance supports concluding the modified award is a DSO. Instead, the language utilized in the Order demonstrates the sole basis for the modified award was the State Court and Diane's belief that Debtor's bankruptcy would eliminate the property equalization obligation in its entirety. The modified award is the prepetition equalization payment disguised as a DSO. It is not a DSO under § 101(14A). As a result, the exceptions to the stay enumerated at §§ 362(b)(2)(A)(ii) and (b)(2)(B) are not available to Diane.

**II. Even if the award was a DSO, enforcement by Diane would be limited to collection of property that is not property of the estate.**

So long as the stay afforded under § 362(a) remains in effect, collection of a DSO is limited to non-estate property. *See* § 362(b)(2)(B). Section 541 provides that upon filing of a bankruptcy petition, "all legal or equitable interests of the debtor in property as of the commencement of the case" becomes part of the bankruptcy estate. § 541(a)(1). Section 1306 incorporates § 541 in Chapter 13 proceedings and expands the definition of "property of the estate" to include all property that a Chapter 13 debtor "acquires after the commencement of the case but before the case is closed." § 1306(a)(1). However, § 1306(a)(1) must be read in conjunction with § 1327(b), which provides, "property of the estate revests in the debtor upon plan confirmation, unless the terms of the plan or confirmation order direct otherwise." To

---

[36] *See* ECF No. 20 ("Due to the automatic stay, Diane is unable to receive her share of the marital estate in the form of the *property settlement payments*.") (emphasis added); ECF No. 45 (characterizing the equalization payment as a "property settlement.").

determine whether at confirmation property revested in the Debtor, one must consider the terms of the confirmed Plan.

Plans in this district explicitly address when property revests in the debtor. *See* Mont. LBF 19, Section 8. The confirmed Plan in this case provides that all property of the estate will revest in Debtor at the closing of the case. As a result, Debtor's assets remain estate property during the pendency of his case. Debtor's case is ongoing. As a practical matter, this provision of Debtor's Plan would prevent Diane from seeking relief under § 362(b)(2)(B) at this stage even if the modified award was a true DSO.

Section 1327(a) provides that the "the provisions of a confirmed plan bind the debtor and each creditor" and "[a]n order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing." *Lomas Mortgage USA v. Wiese*, 980 F.2d 1279, 1284 (9th Cir. 1992), *vacated on other grounds*, 113 S. Ct. 2925 (1993). The binding nature of a plan prevents creditors from taking actions inconsistent with the rights they are afforded by the plan. 8 Collier on Bankruptcy ¶ 1327.02(1)(a) (16th ed. 2020). This includes taking actions to collect debts that are inconsistent with the method of payment provided for under the confirmed plan. *Id.* "

Under the Plan, Diane has an allowed unsecured claim in the amount of $55,956.[37] Notably, Diane's unsecured claim represents the balance remaining on the equalization payment that the modified award sought to offset, a fact that the State Court did not consider through no fault of its own. Section 1327(a) binds Diane to this treatment and prevents her from taking acts to collect on the debt provided for under the Plan in a manner inconsistent with the terms of the Plan.

---

[37] Proof of Claim No. 3.

14

The unsecured claims in Debtor's case total $260,307.80. Under the Plan, Diane will receive her pro rata share (estimated 21.5%) of all funds available to unsecured creditors. No more and no less. While this treatment may not allow Diane to recover the entire amount of the equalization payment, it does provide for treatment of the equalization payment under the Plan and Diane has never objected to this treatment under the Plan. She is now bound by its provisions notwithstanding her detour before the State Court.

### III. The Modified Award will be Discharged at the Conclusion of Debtor's Plan.

Since the modified award is the property equalization payment dressed up as a DSO, it will be discharged if Debtor completes his Plan. "Congress secured a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 proceedings some, but not all of §523(a)'s exceptions to discharge." *Pennsylvania Dept. of Public Welfare v. Davenport*, 459 U.S. 555, 563 (1990); *see also* Collier on Bankruptcy ¶ 1328.01 (16th ed 2020) (describing the Chapter 13 discharge as "broader than the discharge received in any other chapter of the Code, encompassing many types debts that would be nondischargeable in chapter 7, chapter 11, or chapter 12.").

Under § 1328(a), a Chapter 13 debtor who has completed all payments under the bankruptcy plan is entitled to a discharge of all prior debts provided for in the plan, subject only to several specifically enumerated exceptions. One such exception exists for DSOs under §523(a)(5). *See* § 1328(a)(2). Property settlement awards, however, which are generally nondischargeable in individual proceedings under chapters 7 and 11, and in cases under chapter 12 pursuant § 523(a)(15),[38] are not listed as an exception to § 1328(a)'s otherwise broad

---

[38] *See* 4 Collier on Bankruptcy ¶ 523.23 (16th ed. 2020) ("in individual cases under chapters 7 and 11 and in cases under chapter 12…the distinction between a [DSO] and other types of obligations arising out of a marital relationship is of no practical consequence.").

15

discharge language. Accordingly, they remain dischargeable by way of the "super discharge" specific to chapter 13 cases. *In re Mele*, 501 B.R. 357, 368 (9th Cir. BAP 2013).

Despite Diane's efforts to change the underlying character of the equalization payment from a property settlement award to a DSO, this Court determines that the modified award is the same prepetition debt that is the subject of Proof of Claim No. 3 and already being administered under the Plan. Accordingly, the modified award will be discharged if Debtor successfully completes his Plan. *See* § 1328(a) ("as soon as practicable after completion by the debtor of all payments under the plan,…the court shall grant the debtor a discharge *of all debts provided for by the plan*.") (emphasis added). Granting Diane stay relief to collect a dischargeable debt would run afoul of the broad discharge Chapter 13 provides.

## CONCLUSION[39]

Based on the foregoing, the Court determines that the modified award is not a DSO under § 101(14A) and that enforcement of the modified award would violate the automatic stay provided by § 362(a). Therefore, the Motion is denied. [40]

Dated October 19, 2020.

---

[39] Nothing in this Decision is intended to limit or disregard the State Court's continuing jurisdiction to modify the terms of the Divorce Decree or to modify the respective obligations of the parties it sets forth. Additionally, nothing in this Decision is intended to suggest that there exists no set of circumstances where modification of the maintenance award is appropriate. It simply determines that the nature of the award created by the Order Modifying Maintenance and the grounds relied on by the State Court were not indicative of the creation of a modified DSO.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana